UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WILBERT LEE HICKS,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>D. PARAMO, WARDEN,<br><br>　　　　　Respondent.<br>_____ | No. CV 12-5857-PLA<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**SUMMARY OF PROCEEDINGS**

　　On May 28, 2010, a Los Angeles County Superior Court jury convicted petitioner of two counts of felony theft of access card information pursuant to Cal. Penal Code § 484e(d). In a bifurcated proceeding, petitioner admitted that he had suffered four prior convictions, one of which qualified as a prior strike within the meaning of California's Three Strikes Law (Cal. Penal Code §§ 667(b)-(i), 1170.12(a)-(d); Cal. Penal Code § 667.5(b)). (Reporter's Transcript ("RT") 165-67, 173-78; Clerk's Transcript ("CT") 123-27, 131). On June 3, 2010, petitioner was sentenced to state prison for a term of five years. (RT 180, 187; CT 123-32).

　　Petitioner filed a direct appeal. On December 15, 2011, the California Court of Appeal affirmed his conviction in an unpublished decision. (Respondent's Notice of Lodging, ("Lodgment")

5-8). Petitioner then filed a petition for review in the California Supreme Court, which was summarily denied without citation of authority on March 14, 2012. (Lodgment 9-10).

Petitioner did not seek habeas relief in state court prior to filing a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition" or "Pet.") herein on July 6, 2012. (Pet. at 3). Petitioner then consented to have the undersigned Magistrate Judge conduct all further proceedings in this matter. Respondent also consented to have the undersigned Magistrate Judge conduct all further proceedings. Following several extensions of time, respondent filed an Answer and Return on January 24, 2013. (See Docket No. 20).[1] Petitioner filed two requests for extensions of time, but failed to file a reply within the allotted time, nor did he request an additional extension of time in which to do so. Neither did he file any further documents with the Court up to the date of this decision.

This matter has been taken under submission, and is ready for decision.

## II.

## **STATEMENT OF FACTS**

The Court adopts the following factual summary as set forth in the "Facts" section of the California Court of Appeal's opinion[2] (see Lodgment 8 at 2 (footnote 3 in original)):

---

[1] In the Answer, respondent contends that Grounds One and Two are not exhausted because petitioner never presented the federal nature of the claims to the state courts. Respondent argues that the claims either should be dismissed as unexhausted or denied for failure to show a federal constitutional violation. (See Docket No. 20 at 9, 17-18, 23, 27). A federal court may deny an unexhausted claim on the merits "when it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, to the extent that petitioner's Grounds One and Two are unexhausted, the Court has decided to exercise its discretion to deny petitioner's unexhausted claims on the merits.

[2] The Court notes that recent Ninth Circuit cases have accorded the factual summary set forth in a state court appellate opinion a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009), cert. denied, 558 U.S. 1126 (2010); Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009); Moses v. Payne, 555

(continued...)

2

> On January 4, 2010, Rafael Avalos accidentally left his wallet at a gas station convenience store. When he returned to the store a short time later, his wallet was gone. The wallet contained two credit cards issued to him. Avalos cancelled both cards.
> [Petitioner] found the credit cards at the gas station and picked them up. He tried to use the cards to buy gas at two different gas stations, but was unable to enter the correct zip code at the gas pump. On January 19, 2010, police stopped [petitioner] in a car after noticing the car's registration was expired. [Petitioner] gave the police a photocopy of a driver's license. The name on the driver's license was Herbert Mannery. Police found traffic citations issued to [petitioner] in his wallet. A search of DMV records revealed that [petitioner] was not Mannery.[3] [Petitioner] was arrested. While searching the car, police found Avalos's two credit cards. [Petitioner] later told police he had tried to use the cards to buy gas. He gave the police a copy of his brother's driver's license because he thought there was an outstanding warrant for his arrest and he did not want to be identified.

### III.

### **PETITIONER'S CONTENTIONS**

1. Petitioner's constitutional right to due process was violated when he was prosecuted under California Penal Code § 484e(d) instead of § 484e(c). (Pet. at 5).

2. Petitioner's constitutional right to due process was violated by the trial court's failure to instruct the jury *sua sponte* regarding the corpus delicti rule. (Pet. at 5).

3. Petitioner's constitutional right to due process was violated by an instructional error regarding the sufficiency of the testimony of a single witness. (Pet. at 6).

---

[2](...continued)
F.3d 742, 746 n.1 (9th Cir. 2009); Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008), cert. denied, 555 U.S. 1112 (2009); Mejia v. Garcia, 534 F.3d 1036, 1039 n.1 (9th Cir. 2008), cert. denied, 555 U.S. 1117 (2009). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. Here, petitioner does not contest the Court of Appeal's summary of the underlying facts, and he has not attempted to rebut the presumption of correctness accorded to it. See Tilcock, 538 F.3d at 1141.

[3] Mannery was [petitioner's] brother.

## IV.

## **STANDARD OF REVIEW**

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996). Therefore, the Court applies the AEDPA in its review of this action. See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams). A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062. The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously

4

or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; accord: Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333 n. 7, and "demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam). A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)." Id.; Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. Williams, 529 U.S. at 412; Moses v. Payne, 555 F.3d 742, 759 (9th Cir. 2009). Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

A federal habeas court conducting an analysis under § 2254(d) "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 786, 178 L.Ed.2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."). In other words, to obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

1 justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

The United States Supreme Court has held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Here, petitioner raised claims generally corresponding to his claims herein on direct appeal, which were rejected in a reasoned decision by the California Court of Appeal. (See Lodgment 8). The California Supreme Court subsequently summarily denied the same claims when it rejected petitioner's petition for review. Under such circumstances, the Court "looks through" the California Supreme Court's unexplained denial to the opinion of the California Court of Appeal as the last reasoned decision. See Ylst, 501 U.S. at 803; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (district court "look[s] through" to the last reasoned decision as the basis for the state court's judgment). To the extent that the state court's reasoned decision does not address the federal nature of petitioner's Grounds One and Two, this Court must determine what arguments or theories could have supported the rejection of petitioner's claims, and then assess reasonableness by asking "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Richter, 131 S.Ct. at 786.

**V.**

**DISCUSSION**

**A.  GROUND ONE**

Petitioner claims that his constitutional right to due process was violated when he was prosecuted under California Penal Code § 484e(d) instead of § 484e(c). Petitioner contends that he "only had possession of two 'lost' access cards," which should have been misdemeanor petty theft rather than two felonies. (Pet. at 5). In his Petition for Review to the California Supreme Court, which petitioner attached as an exhibit to his Petition herein, petitioner argued that his

6

conduct in taking possession of credit cards without the cardholder's knowledge fit within the behavior proscribed by § 484e(c), which the legislature intended to punish as a misdemeanor. Because he demonstrated no "more intent than to possess an access card belonging to someone else," he should not receive the harsher penalty intended for those who somehow acquired access card account information. (Docket No. 1 at 26, 28, 32).

### 1. The record below

Petitioner was charged with two felony counts of violating Cal. Penal Code § 484e(d) (see CT 31-32), which provides:

> Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft.

In contrast, Cal. Penal Code § 484e(c) provides:

> Every person who, with the intent to defraud, acquires or retains possession of an access card without the cardholder's or issuer's consent, with intent to use, sell, or transfer it to a person other than the cardholder or issuer is guilty of petty theft.

An "access card" is defined, in relevant part, by Cal. Penal Code § 484d(2), as "any card, plate, code, account number, or other means of account access that can be used … to obtain money, goods, services, or any other thing of value." No statutory definition of "access card account information" is provided. See People v. Molina, 120 Cal. App. 4th 507, 512, 15 Cal. Rptr. 3d 493 (Cal.App. 2 Dist. 2004) ("There is no statutory definition of 'access card account information.'"). California courts, however, have held that "[a]n access card account number is both an access card and access card account information." Molina, 120 Cal. App. 4th at 517 (internal citation omitted).

### 2. The opinion of the California Court of Appeal

On direct appeal, the California Court of Appeal concluded that, under California law, petitioner "could properly be prosecuted under section 484e, subdivision (d)." (Lodgment 8 at 7).

### 3. Analysis

Federal habeas review is limited to claims raised by a person in custody pursuant to the judgment of a state court only on the ground that the individual is held in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (reiterating that "federal habeas corpus relief does not lie for errors of state law"). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Wilson v. Corcoran, __ U.S. __, 131 S.Ct. 13, 16, 178 L. Ed. 2d 276 (2010) (quoting Estelle, 502 U.S. at 67-68). Accordingly, "[t]he starting point for cases subject to §2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." Marshall v. Rodgers, __ U.S. __, 133 S. Ct. 1446, 1449, 185 L. Ed. 2d 540 (2013) (citing Williams, 529 U.S. at 412); Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). Here, petitioner points to no United States Supreme Court case that clearly establishes that his federal due process rights were violated when he was prosecuted under California Penal Code § 484e(d) instead of § 484e(c). Where no decision of the Supreme Court squarely addresses an issue, it cannot be said that the state courts' decision on that issue unreasonably applied clearly established federal law for purposes of 28 U.S.C. § 2254(d). See Wright v. Van Patten, 552 U.S. 120, 126, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008) (per curiam) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." (internal quotation marks omitted)); see also Brewer v. Hall, 378 F.3d 952, 955 (9th Cir.) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."), cert. denied, 543 U.S. 1047 (2004).

To the extent that petitioner in his Ground One may be claiming that his conviction pursuant to Cal. Penal Code § 484e(d) violated due process because it constituted an "unforeseeable and retroactive judicial expansion of narrow and precise statutory language," petitioner has failed to

point to any California case that holds that evidence of intent "to possess [a validly issued] access card belonging to someone else," is insufficient to violate § 484e(d). See Cavitt v. Cullen, 728 F.3d 1000, 1005, 1009 (9th Cir. 2013) (no violation of due process under the "unforeseeable and retroactive judicial expansion" theory where petitioner failed to identify any California case absolving a defendant in similar circumstances) (citing Bouie v. City of Columbia, 378 U.S. 347, 352, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964)), cert. denied, 134 S. Ct. 1522, 188 L. Ed. 456 (2014); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007) (an "unforeseeable state-court construction of a criminal statute" may deprive a defendant of due process because, in such circumstances, the defendant lacks "fair warning that his contemplated conduct constitutes a crime"). Nor has petitioner cited any California cases showing that the application of the statute to the factual circumstances of his conviction constituted "switch[ing] from a narrow judicial construction of a statute to a broader construction." See Marks v. United States, 430 U.S. 188, 195-96, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) (holding that Bouie's retroactivity rule was implicated when the Supreme Court shifted from a narrow interpretation of obscenity laws to a broader one). To the contrary, California courts have rejected a similar claim, finding that "possession of a validly issued access card of another necessarily means possession of account information with respect to an access card validly issued to another." Molina, 120 Cal. App. 4th 507, 518. Accordingly, state courts have held that a person can properly be convicted pursuant to Cal. Penal Code § 484e(d) for "fraudulent possession of [a] victim's validly issued credit card." Id. at 519. Moreover, to the extent that petitioner may be claiming that his conviction under this statute is invalid because no evidence supported that he had used the victim's credit cards, under California law, the charged crime requires evidence of possession of access card account information with a fraudulent intent, but it "does not require that the information actually be used or that the account of an innocent consumer actually be charged or billed." Id. at 516.

Therefore, the Court finds petitioner has failed to show even a colorable federal claim and, accordingly, has not met his burden of showing that the State courts' rejection of his due process claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

**B. GROUNDS TWO AND THREE**

In Ground Two, petitioner claims that his constitutional right to due process was violated by the trial court's failure to "instruct the jury *sua sponte* regarding the corpus delicti rule." (Pet. at 5). Petitioner contends that the trial court's failure to instruct the jury with CALJIC No. 2.72 "unduly influenced the jury into believing [petitioner's] statements to a police investigator." (Id.) In his attached Petition for Review to the California Supreme Court, petitioner claims that the failure to instruct the jury with CALJIC No. 2.72 was prejudicial because the case against petitioner was not "overwhelming," and the failure to instruct the jury that they required proof of each element of the crime independent of petitioner's statements to the police may have caused the jury to convict only on the basis of petitioner's statement. (Docket No. 1 at 35-36).

In his Ground Three, petitioner claims that his constitutional right to due process was violated by an instructional error regarding the sufficiency of the testimony of a single witness. (Pet. at 6). Petitioner contends that the trial court's use of a "modified version of CALJIC 2.27 – sufficiency of testimony of one witness – was prejudicial" and violated his federal due process rights. (Id.) In his attached Petition for Review to the California Supreme Court, petitioner argues that the modified instruction was prejudicial because it "improperly communicated the court's approval and support of the testimony by the witness for the prosecution." (Docket No. 1 at 40).

### 1. The record below

Petitioner's jury was instructed, in part (RT 132; CT 93):

> [E]ach fact essential to complete a set of circumstances necessary to establish guilt must be proven beyond a reasonable doubt. In other words, before an inference essential to establish guilt can be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be so proved.

The jury also was instructed, in part, that: "Evidence of an oral admission of a defendant not contained in an audio or video recording and not made in court should be viewed with caution." (RT 137; CT 101).

In addition, the jury was instructed with a modified version of CALJIC 2.27, sufficiency of testimony of one witness, as follows (RT 134; CT 98):[4]

> You should give the uncorroborated testimony -- and there's no corroboration necessary here -- of a single witness whatever weight you think it deserves. Testimony concerning any fact by one witness, which you believe, whose testimony about the fact doesn't require corroboration -- and there's none required here -- is sufficient for the proof of the fact. Just carefully review all the evidence upon which the proof of the fact depends.
> You don't set yourself up and say well, I want two witnesses on something or I want two witnesses in [sic] this or that. You decide on every single witness what you believe and what's proved from whatever you accept and believe.

The jury was also instructed with CALJIC 2.20, which instructs that the jurors are "the sole judges of the believability of a witness and the weight to be given the testimony of each witness." (RT 134; CT 99). In addition, the jury was instructed that the judge did not intend "to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness. [¶] If I have done that in any way, which I don't -- I haven't. I don't believe I have -- form your own opinion." (RT 140; CT 114).

### 2. The opinion of the California Court of Appeal

On direct appeal, the California Court of Appeal concluded that, although it was error not to instruct on the corpus delicti rule, the error was harmless. (Lodgment 8 at 7). The Court of Appeal reasoned, in relevant part, as follows (id. at 7-8 (internal citations omitted)):

> [T]he modicum of necessary independent evidence of the corpus delicti, and thus the jury's duty to find such independent proof, is not great. The independent evidence may be circumstantial, and need only be "a slight or prima facie showing" permitting an inference of injury, loss, or harm from a criminal agency, after which the defendant's statements may be considered to strengthen the case on all issues. If, as a matter of law, this "slight or prima facie" showing

---

[4] In its unmodified form, CALJIC No. 2.27 states (see CT 98):
You should give the uncorroborated testimony of a single witness whatever weight you think it deserves. Testimony concerning any fact by one witness, which you believe, [whose testimony about that fact does not require corroboration] is sufficient for the proof of that fact. You should carefully review all the evidence upon which the proof of that fact depends.

11

> was made, a rational jury, properly instructed, could not have found otherwise, and the omission of an independent-proof instruction is necessarily harmless.
> 
> [Petitioner] asserts that absent his statements to police, there was no evidence he attempted or intended to use Avalos's credit cards. We conclude a slight or prima facie showing of independent evidence was made in this case that [petitioner] had the requisite fraudulent intent. Avalos left his wallet at a gas station, and when he returned a short time later, it was gone. The gas station attendant knew nothing about the wallet. There is an inference that the wallet and the credit cards inside were stolen. When police stopped [petitioner], he gave a false name and produced identification that was not his. Police found the cards in [petitioner]'s car over two weeks after Avalos left his wallet at the gas station. One card was in each of the car's front door pockets. These circumstances suggested [petitioner] did not have an innocent purpose in possessing the cards. This independent evidence of the corpus delicti was sufficient. The court's failure to give an independent proof instruction was harmless.

Further, the Court of Appeal, in rejecting petitioner's Ground Three on direct appeal, concluded as follows (Lodgment 8 at 10):

> Here, the trial court read the bracketed portions of the unmodified instruction, then added language to clarify that the bracketed portions did not in fact apply. Although the instruction may have been more clear had the court simply omitted the bracketed portions altogether, we do not find it reasonably likely that the trial court's additions caused the jury to misconstrue the instruction or the law. The trial court's additions to the instruction were accurate. No corroboration of witness testimony was needed in this case. The bracketed portions of the instruction would naturally cause the jury to wonder if corroboration was needed. The court's statements answered that question in advance. It is not reasonably likely that the court's additions to the instruction led the jury to believe it could place greater weight on a single witness's testimony than it would otherwise. The instruction told the jury to give a single witness's testimony "whatever weight you think it deserves." The court's additions to the instruction did not negate this portion of the instruction. Further, the trial court instructed the jury with CALJIC No. 2.20, which informed the jurors they were "the sole judges of the believability of a witness and the weight to be given the testimony of each witness." CALJIC No. 2.20 also gave the jurors a list of factors they could consider in determining the believability of a witness, as well as anything else "that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness."
> 
> In light of the instructions as a whole, we see no reasonable likelihood that the jury misconstrued the court's additions to CALJIC No. 2.27 to mean it *should* find [petitioner] guilty based on a single witness's testimony alone, or that any single witness's testimony was to be believed. Instead, the combined instructions informed the jury that it had to determine whether to believe each witness and how much weight to give each witness's testimony. We find no prejudicial error.

### 3. **Federal Law**

Initially, to the extent that any portion of petitioner's Ground Two or Ground Three is premised on a contention that the trial court failed to give certain jury instructions, or gave incorrect jury instructions, in violation of state law, such a claim is not cognizable on federal habeas review. As set forth above, federal habeas review is limited to claims raised by a person in custody pursuant to the judgment of a state court only on the ground that the individual is held in custody in violation of the Constitution or laws or treaties of the United States. See Estelle, 502 U.S. at 67-68. Rather, to merit habeas relief when an allegedly erroneous jury instruction is given, or an instruction is omitted, petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process." Estelle, 502 U.S. at 72; Henderson v. Kibbe, 431 U.S. 145, 154-55, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977); Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). "Where the alleged error is the failure to give an instruction, the burden on the petitioner is 'especially heavy.'" Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992) (quoting Henderson, 431 U.S. at 155). Where the claim is that the instruction was ambiguous and therefore subject to an erroneous interpretation, the question is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." See Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990)). Further, the allegedly erroneous instruction(s) must be considered in the context of the entire trial record and the instructions as a whole. See Estelle, 502 U.S. at 72; see also Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973).

Notwithstanding a Court of Appeal's determination of harmless error, relief is available on federal habeas review only when a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." See Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); see also Fry v. Pliler, 551 U.S. 112, 121, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) (on federal habeas review, courts must assess the prejudicial impact of constitutional error in a state-court criminal trial under Brecht standard); Ayala v. Wong, __ F.3d __, 2014 WL 707162, at *13 (9th Cir. Feb. 25, 2014) (as amended) (on federal habeas review,

courts "apply the Brecht test without regard for the state court's harmlessness determination"); Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010) (same), cert. denied, 132 S. Ct. 338, 181 L. Ed. 2d 212 (2011). Claims of instructional error are subject to harmless-error analysis "so long as the error at issue does not categorically 'vitiat[e]' all the jury's findings." Hedgpeth v. Pulido, 555 U.S. 57, 61, 129 S. Ct. 530, 172 L. Ed. 2d 388 (2008) (alteration in original); see also Doe v. Busby, 661 F.3d 1001, 1021-22 (9th Cir. 2011); Clark v. Brown, 450 F.3d 898, 904 (9th Cir.) (holding that instructional error is subject to harmless error analysis), cert. denied, 549 U.S. 1027 (2006); Bradley v. Duncan, 315 F.3d 1091, 1099 (9th Cir. 2002) (holding that the failure to properly instruct the jury is a trial error subject to harmless-error analysis), cert. denied, 540 U.S. 963 (2003).

### *a. corpus delicti rule*

Pursuant to California law, "the corpus delicti rule requires that a conviction be supported by some evidence, which need only constitute a slight or prima facie showing, but must be in addition to and beyond the defendant's untested inculpatory extrajudicial statements." People v. Rivas, 214 Cal. App. 4th 1410, 1428, 155 Cal. Rptr. 3d 403 (Cal.App. 6 Dist. 2013) (internal quotation marks and citations omitted). As explained in People v. Alvarez, 27 Cal. 4th 1161, 1171, 119 Cal. Rptr. 2d 903, 46 P.3d 372 (2002), "once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues." The requirement that some independent evidence support a defendant's extrajudicial statement is, however, purely a matter of state law. See, e.g., Alvarez, 27 Cal. 4th at 1173 ("[i]t is undisputed that the corpus delicti rule is not a requirement of federal law"); Lopez v. Allison, 2014 WL 3362228, at *7 (E.D. Cal. July 8, 2014) (stating that "California's corpus delicti rule is a matter of state law," and collecting cases); Rodriguez v. Cate, 2013 WL 5521997, at *13 (C.D. Cal. Oct. 2, 2013) (the corpus delicti rule is a state rule that "is not grounded in federal law or the federal constitution").

To the extent that petitioner is claiming in his Ground Two that the omission of the corpus delicti instruction "so infected the entire trial that the resulting conviction violated due process,"

1  Estelle, 502 U.S. at 72, petitioner has failed to show that, in the context of the entire trial record
2  and the instructions as a whole, the error had a "substantial and injurious effect or influence in
3  determining the jury's verdict." See Brecht, 507 U.S. at 637. The record reflects that the jury was
4  instructed that the prosecution must prove each fact necessary to establish guilt beyond a
5  reasonable doubt. (RT 132, 137-38; CT 93, 108, 111). Moreover, the record reflects that
6  independent evidence was offered to support the jury's inference that petitioner acted with the
7  requisite intent to use the credit card account information fraudulently. The victim, Avalos, testified
8  that he left his wallet at the checkout counter at a gas station on January 4, 2010. The wallet
9  contained two validly issued credit cards. When he returned to the gas station, the wallet "had
10 disappeared." (RT 38-40). Officer Arcese testified that he stopped petitioner for a traffic violation
11 approximately two weeks later on January 19, 2010. At that time, petitioner presented a
12 photocopy of a driver's license in someone else's name and initially claimed that it was his license.
13 (RT 45-47). Officer Arcese searched the car that petitioner was driving and found the two missing
14 credit cards, one in each of the front door pockets of the vehicle. (RT 50-52). In closing, the
15 prosecutor argued that the evidence that petitioner had possession of the credit cards two weeks
16 later, the fact that he had hidden them, and that he gave the police a false name and driver's
17 license when they stopped him, was evidence that petitioner possessed the cards with "fraudulent
18 intent." (RT 109-10, 127-28).

Considering the omission of the corpus delicti instruction in the context of the trial record and the jury instructions as a whole, the Court finds that the omission was harmless because there was no reasonable possibility that it had a substantial and injurious effect or influence on the jury's finding that petitioner was guilty of two counts of theft of access card information.

Accordingly, the Court finds that petitioner has failed to show even a colorable federal claim and, accordingly, has not met his burden of showing that the California Court of Appeal's rejection of his instructional error claim was contrary to, or an unreasonable application of, clearly established Supreme Court law.

For the foregoing reasons, habeas relief is denied for Ground Two.

### ***b.      modified version of CALJIC 2.27***

The record reflects that the trial court added comments when instructing the jury regarding the need for corroboration of the testimony of a single witness. (Cf. RT 134 with CT 98). However, as the California Court of Appeal concluded, the added comments correctly reflected the law (Lodgment 8 at 10):

> The trial court's additions to the instruction were accurate. No corroboration of witness testimony was needed in this case. The bracketed portions of the instruction would naturally cause the jury to wonder if corroboration was needed. The court's statements answered that question in advance.

This Court is bound by a state court's interpretation and application of California law. See Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed.2d 407 (2005) (a federal habeas court is bound by state court interpretations of state law).

Further, as set forth above, the Court evaluates an allegedly erroneous or ambiguous instruction in the context of the entire trial record. See Estelle, 502 U.S. at 72. Here, although petitioner claims that the modified version of this one jury instruction "improperly communicated the court's approval and support of the testimony by the witness for the prosecution" (Docket No. 1 at 40), the record reflects that the jurors were specifically instructed that they are "the sole judges of the believability of a witness and the weight to be given the testimony of each witness." (RT 134; CT 99). In addition, the jurors were instructed that the trial judge did not intend "to intimate or suggest … that I believe or disbelieve any witness. [¶] If I have done that in any way … form your own opinion." (RT 140; CT 114). Petitioner has failed to adduce any evidence to rebut the presumption that the jurors properly followed these instructions regarding the weight to be given to the testimony of each witness. See Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727,145 L. Ed. 2d. 727 (2000); Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987); Hovey v. Ayers, 458 F.3d 892, 913 (9th Cir. 2006).

The Court therefore finds that petitioner has failed to meet his burden of showing that the California Court of Appeal's rejection of this instructional error claim was contrary to, or an unreasonable application of, clearly established United States Supreme Court law.

For the foregoing reasons, habeas relief is denied for Ground Three.

**C. CERTIFICATE OF APPEALABILITY**

Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a certificate of appealability ("COA") when it denies a state habeas petition. See also 28 U.S.C. § 2253(c).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a COA. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A COA may issue "only if . . . [there is] a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (citation omitted); see also Sassounian v. Roe, 230 F.3d 1097, 1101 (9th Cir. 2000). Thus, "[w]here a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

The Court concludes that, for the reasons set out above, jurists of reason would not find the Court's assessment of petitioner's claims debatable or wrong. Accordingly, a certificate of appealability is **denied**. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

**VI.**

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Judgment is entered denying and dismissing the Petition with prejudice. A certificate of appealability is also denied.

DATED: July 31, 2014

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

17